UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                             Chapter 7

MARVIN JEMAL and                                  Case No. 11-50734-CEC
ROBIN JEMAL,

                     Debtors.
-----------------------------------------------------------------x

## **DECISION**

APPEARANCES:

| | |
|---|---|
| Roy J. Lester, Esq. | Holly Rai, Esq. |
| Law Offices of Lester & Associates, P.C. | LaMonica, Herbst & Maniscalco LLP |
| 600 Old Country Road, Suite 229 | 3305 Jerusalem Avenue |
| Garden City, New York 11530-2008 | Wantagh, New York 11793 |
| *Attorney for the Debtors* | *Attorney for the Chapter 7 Trustee* |
| | |
| Richard G. Haddad, Esq. | Corrine LaCroix Tighe, Esq. |
| Deneka L. Perry, Esq. | Kasia Walch, Esq. |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Finestein & Malloy LLC |
| 230 Park Avenue, 29th Floor | 70 South Orange Avenue |
| New York, New York 10169 | Livingston, New Jersey 07039 |
| *Attorneys for Israel Discount Bank* | *Attorney for BNY Mellon, N.A.* |

CARLA CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of BNY Mellon, N.A. ("BNY"), seeking an extension of time to file a proof of claim in this case, or, alternatively, a determination that its is claim entitled to distribution with timely filed claims pursuant to § 726(a)(2)(C) of Title 11, U.S.C., because it did not have notice of the bankruptcy filing prior to the deadline for filing proofs of claim (the "bar date").[1]  The motion is opposed by several parties in interest, who claim that, although BNY did not have notice of the bar date to allow it to timely file a proof of claim, it should be precluded from receiving a distribution pursuant to § 726(a)(2)(C) because it waited approximately seven months from the time it learned of the bankruptcy case to bring this motion, during which time settlement negotiations have occurred in this case, which they claim would be upended if BNY's motion is granted.  For the reasons stated below, BNY's claim is entitled to distribution with timely filed claims pursuant to § 726(a)(2)(c) provided that proof of BNY's claim is filed in time to permit payment of it.

**JURISDICTION**

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

**BACKGROUND**

On December 28, 2011, Marvin Jemal and Robin Jemal (the "Debtors") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  The Debtors filed Schedules D, E,

---
[1] Unless otherwise indicated, all statutory citations are to provisions of Title 11, U.S.C.

and F which list creditors holding secured and unsecured claims against the estate, on February 2, 2012. The schedules did not list BNY or its predecessor in interest, Bank of New York. Pursuant to the Notice of Discovery of Assets entered by the clerk's office on February 21, 2012, the bar date was set as May 21, 2012. The Debtors filed an amended Schedule F on October 10, 2012, to add an unsecured claim of BNY in the amount of $1.3 million. BNY filed the instant motion on February 11, 2013, seeking an extension of time to file its proof of claim.[2]

BNY asserts that its claim arises from a promissory note executed by the Debtors in favor of the Bank of New York in 2003, in the principal sum of $1.3 million, which was assigned to BNY on November 30, 2010. The note was originally secured by a mortgage on property located at 119 Spier Avenue, Allenhurst, New Jersey (the "Property"). In an action filed by Metropolitan National Bank ("Metropolitan") in state court on December 23, 2010, seeking to foreclose on the Property, it was determined that Metropolitan's mortgage lien was superior to BNY's mortgage, and Metropolitan was authorized to proceed with the foreclosure action uncontested. By order dated July 20, 2012, this Court granted Metropolitan relief from the automatic stay with respect to the Property. The Property was sold at a sheriff's sale on January 22, 2013. Appl. in Supp. of Mot. for an Order Extending Time of BNY Mellon, N.A. To File a Proof of Claim and To Object to the Debtor's Discharge and/or Move To Dismiss, ECF No. 104, ¶¶ 2-7.[3]

Robert DeChristofaro, a Vice President of BNY, filed a certification on behalf of BNY. Certification of Robert J. DeChristofaro ("DeChristofaro Cert."), ECF No. 102. According to the certification, BNY did not become aware of Debtors' bankruptcy until "sometime in July 2012,"

---

[2] The motion also sought to extend the time for BNY to object to the Debtors' discharge and/or move to dismiss. By letter filed on March 14, 2013, BNY withdrew the portion of the motion seeking that relief.

[3] "ECF No." refers to documents filed on this Court's electronic docket in this case, identified by number.

after the May 21, 2012 deadline for filing claims had passed. DeChristofaro Cert. at ¶ 11. BNY argues that because it had no notice of the bankruptcy to allow it to timely file a proof of claim, it is entitled to an order extending its time to file its claim.

Opposition to BNY's motion was filed by Israel Discount Bank ("IDB"), ECF No. 106 (the "IDB Objection"), which, on May 18, 2012, filed a secured proof of claim arising from a $3.6 million money judgment obtained against the Debtors; by the Debtors, ECF No. 109; and by the Chapter 7 trustee, Lori Lapin Jones (the "Trustee"), ECF No. 115 (the "Trustee Objection"). None of the objections disputes BNY's contention that it did not have actual or constructive notice of the bankruptcy filing until after the deadline to file proofs of claim had passed, or disputes BNY's account of the sequence of events that occurred after BNY learned of the Debtors' bankruptcy.

IDB argues that BNY's motion should be denied because BNY failed to offer a valid reason for filing its motion approximately seven months after learning of the Debtors' bankruptcy filing. IDB argues that allowing BNY to file a proof of claim at this juncture would "severely and unjustifiably prejudice the rights of other creditors in this bankruptcy, including IDB, by threatening to destroy nearly a year's worth of settlement negotiations among the Debtors, IDB… and the Trustee." IDB Objection at ¶ 2. The Debtors and the Trustee filed opposition on similar grounds. According to the Trustee, during the one year period since the filing of the Debtors' bankruptcy petition, the Trustee engaged in extended negotiations with the Debtors and IDB, and the parties were "in advanced negotiations for a global settlement." Trustee Objection at ¶ 6. In the Trustee's view, "[i]nsertion of Movant's $1,300,000.00 claim could derail the negotiations because the anticipated creditor recovery would be dramatically diluted. Absent a filed claim by Movant, the parties did not factor Movant into their

negotiations." Trustee Objection at ¶ 6.

BNY filed a reply to the IDB Objection, with a certification by Corrine LaCroix Tighe, the attorney who represented BNY in the state court litigation. Certification of Corrine LaCroix Tighe ("Tighe Cert."), ECF No. 112. Ms. Tighe states that in the state court foreclosure action brought by Metropolitan, BNY filed an answer with a counterclaim and cross claim against IDB, asserting that it is a creditor of the debtors holding a claim in the principal amount of $1.3 million. Tighe Cert. at ¶ 4. The certification states that Ms. Tighe's firm was not made aware of the bankruptcy filing until she received an email from Metropolitan's counsel on July 12, 2012, advising that Metropolitan had sought relief from the automatic stay in this bankruptcy case. Tighe Cert. at ¶ 7. Ms. Tighe further asserts that soon after learning of the bankruptcy, she contacted the Debtors' counsel and advised him that BNY was not listed on the Debtors' schedules, and that BNY was the holder of a valid claim against the Debtors. Tighe Cert. at ¶ 9. Ms. Tighe states that on September 25, 2012, she sent a fax to Debtors' counsel advising him that BNY was the holder of a note against the Debtors and mortgage securing the Property in the principal sum of $1.3 million, along with a copy of the mortgage, and a proposed stipulation extending the Debtors' time to file a proof of claim, followed by a fax on October 2, 2012 providing additional information requested by Debtors' counsel. Tighe Cert. at ¶¶ 10, 11. Debtors' counsel signed and returned the stipulation on October 11, 2012. Tighe Cert. at ¶ 12. Thereafter, Ms. Tighe attempted to contact the Trustee's counsel on several occasions to obtain her consent to the stipulation, without success, and ultimately sent a copy of the draft stipulation to the Trustee's counsel via Federal Express on November 20, 2012. Tighe Cert. at ¶¶ 13-16. Ms. Tighe asserts that she submitted a revised stipulation to Debtors' counsel in January 2013, because the previously stipulated deadline had expired, but no response was received. Tighe

Cert. at ¶ 19. The instant motion was filed on February 11, 2013.

BNY argues that it should be entitled to file a late proof of claim because it delayed filing the instant motion only because it sought to resolve the dispute consensually. BNY also asserts that each of the objectors knew of BNY's claim as of November 2012. IDB knew of BNY's claim as a co-defendant and cross-claimant in Metropolitan's foreclosure action; Debtors' counsel through his contact with Ms. Tighe in September 2012; and the Trustee through the proposed stipulation sent to her counsel via Federal Express on November 20, 2012. In its reply, BNY also raised the argument that under § 726(a)(2)(C) of the Bankruptcy Code, it should be permitted to file a late proof of claim and be entitled to distribution along with timely filed claims.[4]

A hearing on BNY's motion was held on March 12, 2013. At the hearing, the Court allowed the objecting parties to submit additional briefing explaining why, in their view, BNY's claim should not be entitled to receive a distribution with timely filed claims under § 726(a)(2)(C). Both the Debtors and IDB filed further briefs, arguing that BNY's motion should be denied based upon the doctrine of laches.

## DISCUSSION

Pursuant to Rule 3002(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), a proof of claim in a Chapter 7 case is "timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code," unless one of six enumerated exceptions applies. Pursuant to Bankruptcy Rule 9006(b)(3), the Court may

---

[4] Although § 726(a)(2)(C) was not cited in the motion originally filed by BNY, in seeking to extend its time to file a proof of claim, BN's motion, in substance, sought to have its tardily filed claim receive distribution with timely filed claims in accordance with § 726(a)(2)(C). The parties were given an opportunity to, and did, respond to this argument in supplemental briefs filed after the hearing on the motion.

enlarge the time set under Bankruptcy Rule 3002(c) "only to the extent and under the conditions stated in [that rule]." See In re Bell, 225 F.3d 203, 210 n.8 (2d Cir. 2000) (citing Zidell, Inc. v. Forsch (In re Alaska Coastal Lines, Inc.), 920 F.2d 1428 (9th Cir.1990)) ("[N]o equitable power exists to depart from the mandate of Rule 9006(b)(3)."). As none of the enumerated exceptions applies to allow extension of the time for BNY to file its claim after the bar date in this case, the Court does not have authority to deem BNY's claim timely filed.

However, in a Chapter 7 case, a claim that is not "timely filed" is entitled to distribution along with timely filed claims if the claim meets the requirements of § 726(a)(2)(C). Section 726, which sets forth the priorities of distribution of property of the estate in a Chapter 7 case, provides that after distribution in payment of properly filed claims entitled to priority under § 507, property of the estate is distributed

> (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is--
>
>> (A) timely filed under section 501(a) of this title;
>>
>> (B) timely filed under section 501(b) or 501(c) of this title; or
>>
>> (C) tardily filed under section 501(a) of this title, if--
>>
>>> (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
>>>
>>> (ii) proof of such claim is filed in time to permit payment of such claim;
>
> (3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection….

The purpose of § 726(a)(2)(C) is "to permit distribution to creditors that tardily file claims if their tardiness was due to lack of notice or knowledge of the case.  Though it is in the interest of the estate to encourage timely filing, when tardy filing is not the result of a failure to act by the creditor, the normal subordination penalty [of § 726(a)(3)] should not apply."  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 383 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6339).  Section 726(a)(2)(C) provides only two prerequisites for a tardily filed claim to be entitled to distribution along with timely filed claims in a Chapter 7 case: that the holder of the claim did not have notice to allow it to timely file a proof of claim (such claimant being referred to as a "no-notice" creditor), and that the claim is filed in time to permit payment of the claim.

This statutory scheme for the treatment of late-filed claims of no-notice creditors applies only in Chapter 7 cases.  See § 103(b).  In contrast, the holder of a claim that is not timely filed in a case under Chapter 11 of the Code may receive distribution with timely filed claims if it can show that the failure to file timely was the result of "excusable neglect."  See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 389 (1993) ("The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases.").  In Pioneer, the Supreme Court explained the reason for this disparity in the treatment of late filed claims in Chapter 7 and Chapter 11:

> [w]hereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors. See United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983). In overseeing this latter process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527-528, 104 S.Ct 1188, 1197, 79 L.Ed.2d 482 (1984).

Id.  Thus, where a claim is filed late in a Chapter 7 case, application of the "excusable neglect"

standard is inappropriate, and the arguments made by both parties addressing the reasons for BNY's delay are not pertinent to the inquiry under § 726(a)(2)(C).

It is undisputed that BNY did not have notice or actual knowledge of the case until after the bar date of May 21, 2012, and that no distribution has yet been made in this case to prevent payment of the claim.[5] As the two criteria expressly set forth in § 726(a)(2)(C) are met, the plain language of the statute dictates that BNY's tardily filed claim is entitled to distribution along with timely filed claims.

The objecting parties argue that notwithstanding BNY's satisfaction of these criteria, it should be barred from receiving a distribution with timely filed claims because of its delay in filing this motion. This argument primarily relies on the doctrine of laches.[6]

"Laches is an equitable defense based on the maxim vigilantibus non dormientibus aequitas subvenit (equity aids the vigilant, not those who sleep on their rights). It bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 259 (2d Cir. 1997) (quotations omitted). It is well-established that a party may not employ a laches defense against a claim filed within an express statute of limitations. See Ivani, 103 F.3d at 260 ("[W]hen a plaintiff brings a federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within

---

[5] Although, under § 726(a)(2)(C), it is not necessary for BNY to seek court permission before filing its proof of claim, (Columbia Ribbon & Carbon Mfg. Co., 54 B.R. 714, 714 n.1 (Bankr. S.D.N.Y. 1985)), BNY has not yet filed a proof of claim. The decision is based upon the assumption that BNY will file its proof of claim "in time to permit payment" as required under § 726(a)(2)(C).

[6] The Debtors also assert that BNY's motion should be denied based on its failure to file a proof of claim by October 24, 2012, the date upon which the Debtors had consented to allow BNY to file a late proof of claim. However, the stipulation setting this deadline was never approved by the Court or executed by the trustee, as expressly contemplated in the proposed stipulation. Even if a deadline for filing a claim in order to receive distribution under § 726(a)(2)(C) can be set by stipulation, this unapproved, not fully executed stipulation will not be given effect.

which the action is timely."); United States v. RePass, 688 F.2d 154, 158 (2d Cir. 1982) (citing United States v. Mack, 295 U.S. 480, 489 (1935)) ("Laches is not a defense to an action filed within the applicable statute of limitations."). One of the principal reasons for this rule is that "separation of powers principles dictate that federal courts not apply laches to bar a federal statutory claim that is timely filed under an express federal statute of limitations." Ivani, 103 F.3d at 260 (quoting Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 170 (8th Cir. 1995)).

Here, § 726(a)(2)(C) provides that the claim of a no-notice creditor must be filed "in time to permit payment of such claim," which constitutes the statutory deadline for such creditor to file a proof of claim. One court has concluded that the reason Bankruptcy Rule 3002 does not provide a deadline for a no-notice creditor to file a tardy proof of claim is because doing so would conflict with clear congressional intent expressed in § 726(a)(2)(C). See Columbia Ribbon & Carbon Mfg. Co., 54 B.R. 714, 718 (Bankr. S.D.N.Y. 1985) (citing the advisory committee note to Bankruptcy Rule 3002, which states that "[r]eference must also be made to § 726(a)(2)(C) and (3) which permits distribution on late filed claims," and concluding that given "the absence of any provision in Rule 3002(c) governing no-notice claims, and the placement of the no-notice creditor provision in a section of the Code providing for distribution[,] that the omission of a rule must be viewed as intentional. It is an expression of opinion by the Advisory Committee on the Bankruptcy Rules that no rule was appropriate, apparently because Code § 726(a)(2)(C) was either viewed as a statute of limitation or as a matter of substantive law"). It would be improper for a court to employ the doctrine of laches to modify the express statutory scheme allowing a no-notice creditor to receive distribution with timely filed claims.

In In re Feldman, the court reached a similar conclusion in addressing whether laches may be invoked against a creditor who files a tardy claim in accordance with § 726(a)(2)(C). There, the court stated that

> the statutory scheme for claims allowance in Chapter 7 cases is expressly set forth in the Bankruptcy Code. By enacting Section 726(a)(2)(C) Congress intended to permit distribution to late filed claims of "known" creditors so long as the claims are filed in time to permit the distribution. This directive supersedes the weighing of the equitable considerations applicable in a chapter 11 case… or a chapter 13 case,… where Section 726 is inapplicable. This proposition is supported by the cases that permit consideration of "excusable neglect" with respect to late filed claims in a chapter 11 case but deny a court that discretion in a chapter 7 case based, in part, on the statutory scheme which specifically reserves the Section 726(a)(2)(C) remedy in chapter 7 liquidation proceedings.

In re Feldman, 261 B.R. 568, 579 (Bankr. E.D.N.Y. 2001); see also Columbia Ribbon, 54 B.R. at 719-20 ("This court finds no place for the application of the doctrine of laches in applying Code § 726(a)(2)(C). Thus, the court need not consider how long the creditor waited to file its claim after learning of the bankruptcy case. The court need only find… that the creditor did not have notice in time to file a claim before the expiration of the 90-day period and that final distribution of the estate has not occurred.") (footnote omitted).

Because § 726(a)(2)(C) applies only in Chapter 7 cases, the cases cited by the objecting parties that apply laches to bar late-filed claims in other chapters of the Code are inapposite. In Chapters 11 and 13, unlike Chapter 7, no statutory scheme provides for distribution to no-notice creditors, and the need to promptly identify claims so that they can be dealt with in a plan makes it important to prevent no-notice creditors from "waiting indefinitely to file a claim." See Walters v. Hunt (In re Hunt), 146 B.R. 178, 184 (Bankr. N.D. Tex. 1992) (denying creditor's request to file a late proof of claim in a Chapter 11 case under the doctrine of laches, stating that

"a creditor cannot wait indefinitely to file a claim"); Indian Motorcycle Assocs., Inc. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Grp., Inc.), 157 B.R. 532, 538-39 (S.D.N.Y. 1993) (relying on Hunt to apply laches to bar a late-filed claim in a Chapter 11 case); Morgan v. Barsky (In re Barsky), 85 B.R. 550, 554 (C.D. Cal. 1988) (finding that while the court may allow a no-notice creditor to file a claim after the bar date in a Chapter 13 case, a court is not precluded "from limiting the creditor's right to file a claim pursuant to the independent doctrine of laches"); In re Decko Prods., Inc., 73 B.R. 275, 276 (Bankr. N.D. Ohio 1987) (where Chapter 11 creditor waited 23 months after receiving notice of the Chapter 11 case, and after a plan had been confirmed, claim barred by laches).

IDB cites United States v. Cardinal Mine Supply, a case decided under Chapter 7 of the code, for the proposition that a no-notice creditor is entitled to due process protections if the creditor files its claim "promptly after learning of the bankruptcy." United States v. Cardinal Mine Supply, Inc., 916 F.2d 1087, 1089 (6th Cir. 1990).  However, in that case, the claim at issue was a priority claim, which, at the time, would not have been entitled to distribution under § 726(a)(1), and which is expressly excluded from treatment under § 726(a)(2). Id.  The court held that, notwithstanding the lack of a statutory remedy for this type of no-notice creditor, due process demands that "when a creditor does not have notice or actual knowledge of a bankruptcy, the creditor must be permitted to file tardily when the creditor does so promptly after learning of the bankruptcy." Id.  Similarly, in In re Cmehil, the court refused to allow a creditor to file a proof of claim more than two years after learning of the bankruptcy, finding that laches prevented such filing notwithstanding "a basic principle of justice – that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights." In re Cmehil, 43 B.R. 404, 408 (Bankr. N.D. Ohio 1984) (quotation omitted).  To the extent that bankruptcy court applied

the doctrine of laches to deny a no-notice claim the treatment prescribed by § 726(a)(2)(C), this Court declines to follow this approach.

Although laches is not applicable to prevent BNY from receiving a distribution pursuant to § 726(a)(2)(C), if it were, consideration of the length and reasons for the delay, as well as the prejudice to the objecting parties that would result from permitting BNY's claim to receive distribution with timely filed claims, would weigh in favor of granting BNY's motion. Laches will bar a claim only if the delay is "unreasonable and inexcusable" and "result[s] in prejudice to the defendant." Ivani, 103 F.3d at 259. "The length of the delay is not dispositive; 'it is the reasonableness of the delay rather than the number of years that elapse which is the focus of inquiry.'" In re Feldman, 261 B.R. 568, 578 (Bankr. E.D.N.Y. 2001) (quoting Stone v. Williams, 873 F.2d 620, 624 (2d Cir. 1989)).

Here, the period between the time that BNY learned of the Bankruptcy Case and the time it filed the instant motion was approximately seven months. BNY has demonstrated that during this period that it attempted to resolve the dispute consensually, and that each of the objecting parties was aware of BNY's claim, and of BNY's lack of timely notice of the bankruptcy, well in advance of the date BNY filed this motion. Both the Debtors and IDB were parties to prepetition state court litigation involving BNY and its claim. The Debtors amended their Schedule F to add BNY's claim on October 10, 2012, approximately four months before BNY filed this motion. Even if laches were applicable, it would be inappropriate under the circumstances of this case to penalize BNY for the delay in filing the instant motion by forfeiting its right to a distribution under § 726(a)(2)(C).

## **CONCLUSION**

For the reasons set forth above, BNY's motion is granted, and BNY's claim is entitled to distribution, to the extent allowed under § 501(a), along with timely filed claims pursuant to § 726(a)(2)(C), provided that BNY files its proof of claim in time to permit payment of the claim. A separate order will be issued.



Dated: Brooklyn, New York
September 9, 2013

_____
Carla E. Craig
United States Bankruptcy Judge